UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE RAMON R. VALENCIANO, et al.,

    Plaintiffs,

    v.

CITY AND COUNTY OF SAN FRANCISCO,

    Defendant.

No. C 07-0845 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion to dismiss the first cause of action came on for hearing on October 16, 2007, before this court. Defendant appeared by its counsel Andrew Gschwind, and plaintiffs appeared by their counsel John G. Hamlin. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

**BACKGROUND**

This is a case alleging a federal claim of taking private property in violation of the Fifth Amendment, and also alleging state law claims.

Plaintiffs Jose Ramon R. Valenciano and Johanna D. Valenciano own residential property located on Ulloa Street in San Francisco. Plaintiffs' only means of egress from the property to the public street is through two driveways on the front of the property. The two driveways are separated by a 10-foot length of curb, which is painted red, and which has a "Tow-Away No Parking" sign in the middle of the ten-foot curb.

Defendant City and County of San Francisco ("CCSF") operates a public transit

agency known as the Municipal Transportation Agency, which includes the San Francisco Municipal Railway ("MUNI"). Plaintiffs allege that MUNI buses frequently block one or both of the driveways, as well as the 10-foot space in between, and that San Francisco Police Department vehicles, as well as private vehicles, frequently park illegally in the 10-foot space.

Plaintiffs assert that CCSF refuses to tow the illegally stopped or parked vehicles or even to respond to complaints regarding those vehicles. They claim that they have written numerous letters since 2005 informing the San Francisco Department of Parking and Traffic ("DPT") of the need for enforcement of parking regulations. They allege that DPT's failure to enforce parking regulations has resulted in a taking of their property because they are sometimes prevented from using their driveways to enter or exit the property.

On July 19, 2006, plaintiffs filed a claim with CCSF based on "interference with property, denial of property rights and inverse condemnation." On August 8, 2006, they filed a revised claim. Plaintiffs assert that CCSF denied the claim on August 17, 2006.[1]

Plaintiffs filed the present action on February 9, 2007, asserting a Fifth Amendment claim of taking of property without just compensation, under 42 U.S.C. § 1983; and also asserting claims of taking of property without just compensation, in violation of Article 1, Section 19 of the California Constitution; inverse condemnation; nuisance; negligence; and intentional infliction of emotional distress. They seek damages and attorney's fees.

CCSF now seeks an order dismissing the first cause of action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). CCSF asserts that the Fifth Amendment claim is not ripe for federal court adjudication because plaintiffs have not yet sought compensation for this alleged taking through a state court action for inverse condemnation, or other action, as required by Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson County, 473 U.S. 172 (1985).

---

[1] The allegations in the complaint are not clear, but this was apparently a claim under the California Tort Claims Act, California Government Code §§ 810, et seq. See Cal. Gov't. Code § 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity").

2

**DISCUSSION**

A.   Legal Standards

Federal courts are courts of limited jurisdiction.  Unlike state courts, they have no "inherent" or "general" subject matter jurisdiction.  They can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate – those involving diversity of citizenship or a federal question, or those to which the United States is a party. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 380-81 (1994).

Federal courts are presumptively without jurisdiction over civil actions, and the burden of establishing the contrary rests on the party asserting jurisdiction.  Id. at 377. Lack of subject matter jurisdiction is never waived, and may be raised by either party or the court at any time.  Attorneys Trust v. Videotape Computer Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

Even where subject matter jurisdiction requirements are met, various doctrines may preclude a case from proceeding in federal court.  These include both jurisdictional and "prudential" limitations on the exercise of federal jurisdiction, such as the case-or-controversy requirement, standing, mootness, ripeness, and the existence of political questions.  See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2007) § 2:1200.

"Ripeness is more than a mere procedural question; it is determinative of jurisdiction."  Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).  The ripeness doctrine prevents premature adjudication.  It is aimed at cases that do not yet have a concrete impact upon the parties.  Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985).  The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 808 (2003).

B.   CCSF's Motion

This case initially presented the court with some difficulty, primarily because it is not clear that the complaint states a federal takings claim.  Rather than first addressing this

3

basic issue, however, CCSF chose to argue that the first cause of action is not ripe because plaintiffs have not pursued compensation for the City's alleged taking in state court. CCSF asserts that pursuant to the Supreme Court's ruling in Williamson, a takings claim is not ripe for adjudication in federal court until a plaintiff has sought compensation through all available state procedures, including a state court lawsuit.

In Williamson, a landowner/developer sued a Tennessee planning commission in federal court for just compensation, claiming that the application of county land use regulations was so onerous as to amount to a taking. Following a jury verdict in favor of the landowner, the district court granted JNOV to the planning commission, finding that the landowner had been unable to derive economic benefit from its property on a temporary basis only, and that such temporary deprivation could not constitute a taking. The Court of Appeals reversed, holding that a temporary denial of property could be a taking, and was to be analyzed in the same manner as a permanent taking.

The Supreme Court granted certiorari to address the question whether federal, state, and local governments must pay money damages to a landowner whose property allegedly has been "taken" temporarily by the application of government regulations. Williamson, 473 U.S. at 185. The Court found, however, that the question was not properly presented, because the planning commission's claim was premature. Id.

The Court held that a takings claim challenging the application of land-use regulations is not ripe unless (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," and (2) the claimant has sought "compensation through the procedures the State has provided for doing so." Id. at 186, 194.

The Court noted that under Tennessee law, a property owner may bring an inverse condemnation action to obtain just compensation for an alleged taking of property under certain circumstances, and that the Tennessee state courts have interpreted the relevant state law to allow recovery through inverse condemnation where the taking is effected by restrictive zoning laws or developmental regulations. Id. at 196. The Court found that the

4

landowner had not shown that the inverse condemnation procedure was unavailable or inadequate, and concluded that until it had utilized that procedure, the taking claim was premature. Id. at 196-97.

Here, CCSF argues that because California provides a state law cause of action for inverse condemnation, and because Article 1, § 19 of the California Constitution prohibits the taking of private property by the State and/or its subdivisions without just compensation, plaintiffs must pursue a claim of inverse condemnation in state court before they can file a Fifth Amendment claim in federal court.

In a footnote, CCSF also asserts that the federal takings claim fails to state a takings cause of action under the Fifth Amendment because plaintiffs do not allege that CCSF actually condemned or occupied their property by eminent domain, and do not allege that CCSF's activities have diminished the value of the property to such an extent that it is as if the property had been condemned.

In opposition, plaintiffs argue that their claims are not based solely on inverse condemnation, and submit that this action is ripe for review by a federal court. Plaintiffs assert that their federal takings claim is ripe because CCSF issued a final decision denying plaintiffs' claims (referring to the Government Code § 945.5 claim). Plaintiffs also contend that damages are unavailable to remedy a "temporary" regulatory taking, and that an inverse condemnation action would therefore provide no relief. They claim that this rule was followed in Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496 (9th Cir. 1990), where the court found that California's compensation procedures were inadequate because California law did not permit landowners to seek compensation for a regulatory taking through an inverse condemnation proceeding.[2]

---

[2] In a second argument, plaintiffs assert that they have raised a separate substantive due process claim, based on CCSF's alleged refusal to enforce the parking regulations. The Ninth Circuit has ruled that substantive due process claims based on governmental interference with property rights are foreclosed by the Fifth Amendment's Takings Clause. Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 949-50 (9th Cir. 2004). This prohibition applies even to a disguised takings claim. Id. Thus, plaintiffs cannot maintain a substantive due process claim based on CCSF's alleged interference with their property rights. Moreover, the complaint as currently pled does not actually allege a substantive due process claim.

5

In reply, CCSF reiterates that under Williamson, the case should be dismissed because plaintiffs have not pursued an available state court inverse condemnation lawsuit seeking compensation for the alleged taking.

CCSF argues that plaintiffs cite no California or federal authority in support of their claim that California law does not afford them an adequate remedy. CCSF contends that an inverse condemnation action under California law affords relief to both permanent and temporary takings, and both physical and regulatory takings; and asserts that it is well-established that under California law that an action for inverse condemnation can be based on a claim of substantial impairment of the right of ingress and egress. In addition, CCSF argues that plaintiffs' reliance on Del Monte Dunes is misplaced because at the time the alleged taking in that case occurred, California did not yet recognize an inverse condemnation claim based on a temporary takings or on regulatory takings.

The United States Constitution provides that "[n]o person shall be deprived of property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const., Amend. V. While the Fifth Amendment does not preclude the government from confiscating private property, it does impose two conditions on the exercise of such authority – the taking must be for a "public use," and "just compensation" must be paid to the owner. Brown v. Legal Found. of Wash., 538 U.S. 216, 231-32 (2003). The Takings Clause is applicable to the states through the Fourteenth Amendment. Dolan v. City of Tigard, 512 U.S. 374, 383 (1994).

The various governmental activities that might interfere with or damage property interests can be divided into two categories – those that cause a physical invasion or interference with property rights by a condemnation proceeding or a physical appropriation ("physical takings"), and those that cause damage by excessive or improper restriction on property rights by regulation or other improper conduct by a public agency ("regulatory takings"). See Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 684 (9th Cir. 1993); see also Brown, 538 U.S. at 233.

The Fifth Amendment distinguishes between physical takings and regulatory takings

6

by the fact that it requires the payment of compensation whenever the government acquires private property for a public purpose, whether the acquisition is the result of a condemnation proceeding or a physical appropriation, but contains no comparable reference to regulations that prohibit a property owner from making certain uses of her private property. Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 321-22 (2002).

The "clearest sort of taking" occurs when the government physically takes possession of an interest in property for some public purpose; it involves the government's encroachment upon or occupation of private land for its own proposed use. Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001); see also Eastern Enterprises v. Apfel, 524 U.S. 498, 522 (1998) (physical takings claim is the "classic taking" in which the government directly appropriates private property for its own use) (citation and quotation omitted).

By contrast, a "regulatory taking" occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property. Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 965 (9th Cir. 2003. Neither a physical appropriation nor a public use is a necessary component of a regulatory taking. Tahoe-Sierra, 535 U.S. at 326.

Here, the complaint does not clearly allege either a regulatory or a physical taking, and CCSF did not move for an order dismissing the first cause of action for failure to state a takings claim, of either type. CCSF argues in a footnote in its reply brief that the complaint does not allege a regulatory taking of plaintiffs' property, but rather a physical taking, and asserts that cases that discuss regulatory takings are therefore not relevant to this action. Williamson, however, was a case that involved a regulatory taking, and CCSF relies on Williamson in arguing that plaintiffs' takings claim is not ripe for adjudication.

Thus, based on CCSF's failure to seek an order dismissing the first cause of action for failure to state a federal takings claim, the court will assume without deciding the issue that the complaint does state a claim. The only question remaining, then, is whether Williamson requires that the first cause of action be dismissed.

At the hearing, the court asked plaintiffs' counsel whether plaintiffs were asserting a physical taking or a regulatory taking, but he was unable to say. He referred to the claim as a "hybrid," involving both a physical taking and a regulatory taking. This concept is unfamiliar to the court, and the court has located no reference in any Supreme Court or Ninth Circuit decision to a "hybrid" takings claim. The court also asked counsel for CCSF to provide some authority for extending Williamson to a physical takings claim, given his insistence that other regulatory takings cases were inapplicable to the present case, but counsel was unable to do so. He simply asserted that Williamson applies in all federal takings cases, regardless of the type of taking being alleged.

Upon further research following the hearing, the court located Ninth Circuit authority stating that while the first Williamson requirement – a final decision by the responsible agency or other entity – applies only in regulatory takings cases, the second requirement – that the property owner must have sought compensation for the alleged taking through available state procedures – applies in all takings cases. See Daniel v. County of Santa Barbara, 288 F.3d 375, 382 (9th Cir. 2002); see also Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902, 912-13 (9th Cir. 2007).

A landowner who files a takings claim in federal court before seeking compensation under the procedures provided by the state "bears the burden of establishing that the state remedies are inadequate." Austin v. City & County of Honolulu, 840 F.2d 678, 680 (9th Cir. 1988). A state's procedures for obtaining compensation are considered adequate under the requirements of Williamson unless it can be shown that "the state courts establish that landowners may not obtain just compensation through an inverse condemnation action under any circumstances." Id. at 681.

California provides a state law cause of action for inverse condemnation. Under California law, an inverse condemnation results from the invasion or appropriation of some valuable property right under the auspices of a public agency or a private entity with the power of eminent domain, which directly and specifically injures the property owner. Selby Realty Co. v. City of San Buenaventura, 10 Cal. 3d 110, 119 (1973). California courts have

8

recognized that action for inverse condemnation can be based on a claim of substantial impairment of the right of ingress and egress. See Border Business Park, Inc. v. City of San Diego, 142 Cal. App. 4th 1538, 1551 (2006), cert. denied, 127 S.Ct. 2280 (2007).

Accordingly, because plaintiffs have not sought compensation from CCSF for the alleged taking through available state procedures – specifically by filing an action for inverse condemnation in state court – the court finds that the first cause of action is not ripe for decision and must be dismissed, notwithstanding the court's stated intention at the hearing to deny the motion.[3]  In addition, the court declines to exercise jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c).

## CONCLUSION

In accordance with the foregoing, the motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

Dated:  October 17, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[3] Plaintiffs' argument that they satisfied the "exhaustion" requirement by filing a Government Code § 945.4 claim with CCSF is without merit. The California Tort Claims Act requirements apply to state law tort claims asserted against public entities in California, and are independent of the requirements of federal claims.

9